**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**UCO OIL COMPANY, and Donald
Simeon, Defendants-Appellees.**

No. 76–2141.

United States Court of Appeals,
Ninth Circuit.

Dec. 13, 1976.

Earl E. Boyd, Asst. U.S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellant.

Michael J. Lightfoot (argued), and Thomas R. Sheridan (argued), Los Angeles, Cal., for defendants-appellees.

Before DUNIWAY and ANDERSON, Circuit Judges, and SCHWARZER,* District Judge.

WILLIAM W SCHWARZER, District Judge:

Defendants were indicted on thirty counts of violating 18 U.S.C. Secs. 1001 and 2. Counts three through thirty of the indictment charged them with making false statements in gasoline service station activity reports, credit card invoices and a maximum selling price form which were submitted to the Internal Revenue Service. The IRS conducted an audit of defendant UCO in the performance of its audit function under the federal petroleum product price control program of the Economic Stabilization Act of 1970. Each count of the indictment is based on a single document

---

* Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

and charges in substance that it is both a false statement and a concealment of a material fact by trick, scheme or device. The falsifications relate to the retail price charged for gasoline, the volume sold or the total revenue derived at particular UCO stations.[1]

This is an appeal from an order of the District Court dismissing the indictment as duplicitous after the government had refused to make an election. Defendants had contended that counts three through thirty were duplicitous in that each charged defendants both with having "made . . . false writings . . . knowing the same to contain false . . . statements" and with having "falsified, concealed and covered up by trick, scheme and device material facts . . ." The government contended that the counts were not duplicitous because each was based on the making of a single false document. The submission of that false document, the government argued, violated the two provisos of Section 1001, relating to false documents and concealing and covering up material facts. (Tr. 123; see also Tr. 112–114, 142–143.) The District Court rejected the government's contention and dismissed the indictment when the government declined to elect. (Tr. 136–138, 141–147.) Defendants also attacked the indictment as multiplicitous, but inasmuch as the District Court dismissed for duplicity, it made no formal ruling on multiplicity.

For the reasons set forth below, we vacate the District Court's order and remand.

## I. *Duplicity*

Duplicity is the joining in a single count of two or more distinct and separate offenses. One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence, including its admissibility against one or more codefendants. See, *United States v. Starks*, 515 F.2d 112, 116–117 (3d Cir. 1975).

On the other hand, an indictment may not charge a single offense in several counts without offending the rule against multiplicity. Here the vice would be that the punishment provided for a single offense may be pyramided by a multi-count indictment.

The foregoing considerations, which reflect fundamental due process rights of defendants, inhibit the otherwise broad prosecutorial discretion in the drafting of indictments. See *United States v. Tanner*, 471 F.2d 128, 138–139 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). They provide the courts with no bright line, however, dividing charges comprising a single offense from those comprising separate and distinct offenses.[2] The question in this case, whether a charge of making a false statement

1. The relevant charging allegations of Count Three of the superseding indictment, which are typical of the charges in the remaining counts, allege that defendants

   "knowingly and willfully made and used false writings and documents knowing the same to contain false, fictitious and fraudulent statements and entries, and falsified, concealed, and covered up by trick, scheme and device material facts, that is, the true and correct retail price per gallon of regular, ethyl, premium or diesel fuel sold at various UCO service stations . . ." (C.T. 21)

2. Defendants rely on *United States v. Diogo*, 320 F.2d 898, 902 (2nd Cir. 1963), in which the court in dictum stated that Section 1001 "encompasses within its proscription two distinct offenses, concealment of a material fact and false representations." We do not take that statement to mean that the government could base two counts on the making of a single false document, charging a false statement in one and concealment in the other. See *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *United States v. Myers*, 131 F.Supp. 525 (N.D.Cal.1955). We think the *Diogo* dictum goes no further than to indicate that the different means of violating section 1001 involve different elements of proof, if it be thought to go further, we decline, to that extent, to follow it. Where the evidence of several acts or transactions alleged to violate Section 1001 differs substantially from one to the other, separate counts would presumably lie. Cf. *United States v. Uram*, 148 F.2d 187, 190

and concealment by trick, scheme or device based on a single document comprises separate and distinct offenses can only be answered by analysis of several relevant factors.

1. The first of these factors obviously is the language of the statute itself. In this case, the indictment charges violations of 18 U.S.C. Sec. 1001 which provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

On the face of it, the statute, framed in a single paragraph and providing a single penalty, does not suggest a Congressional purpose to create more than one offense. Moreover, the statute is directed at a single evil, i. e., the "perversion" of "the authorized functions of governmental departments and agencies . . . which might result from the deceptive practices described." *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). The types of conduct enumerated all fall within the general understanding of what constitutes fraud. As the court put it in *Charles Hughes & Co. v. Securities and Exchange Comm'n*, 139 F.2d 434, 437 (2d Cir. 1943):

"The law of fraud knows no difference between express representation on the one hand and implied misrepresentation or concealment on the other."

See also, *Gusow v. United States*, 347 F.2d 755, 756 (10th Cir. 1965).

It is reasonable to conclude, therefore, that Congress was concerned with proscribing the prohibited result rather than particular kinds of conduct. That being so, consistency calls for interpreting the enumeration of different kinds of conduct in the statute as reflecting different modes of achieving that result, not separate and distinct offenses. See *United States v. Myers*, 131 F.Supp. 525 (N.D.Cal.1955); Rule 7(c)(1), Fed.Rules of Crim.Pro. Such an interpretation of Section 1001 is corroborated by a similar interpretation given one of the statute's forerunners by the Supreme Court in *Crain v. United States*, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896). The statute there involved language which in substance prohibited the making of false documents to obtain money from the United States and the knowing transmittal or presentation of any false document. The Court in *Crain* said:

"We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. The evil that congress intended to reach was the obtaining of money from the United States by means of fraudulent deeds, powers of attorney, orders, certificates, receipts or other writings. The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of not more than $1,000.00. We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused who pleads not guilty to the charge contained in a single count, for a judgment on a general verdict of guilty upon that count will be a bar to any

(2d Cir. 1945). One example might be a charge of the substantive crime in one count and of a conspiracy in another. See, e. g., *United States*

*v. Starks*, 515 F.2d 112 (3d Cir. 1975); of course, no conspiracy charge is made here.

further prosecution in respect to any of the matters embraced by it." (162 U.S. at 636, 16 S.Ct. at 955)

2. The second factor to be considered in determining whether the statute creates separate and distinct offenses is the legislative history and statutory context of Section 1001. That section is a part of Chapter 47 of Title 18 of the United States Code, containing some twenty-eight different sections prohibiting a wide range of "Fraud and False Statements." The particularity of each section of Chapter 47 suggests a Congressional purpose to enact separate prohibitions to deal with different fraud offenses. This view is confirmed by the 1948 revision of Title 18 which changed Section 1001 to its present form. As a part of that revision, the prohibition against false claims contained in the predecessor of Section 1001 was removed to a separate section (Sec. 287), leaving Section 1001 to deal solely with false statements and concealment. See *United States v. Bramblett*, 348 U.S. 503, 508, 75 S.Ct. 504, 99 L.Ed. 594 (1955). Thus, the legislative scheme as a whole affords no support for finding separate and distinct offenses within Section 1001.

Section 1001 may in this respect be contrasted with 18 U.S.C. Sec. 545 which prohibits, in separate paragraphs, the clandestine introduction or smuggling of goods into the United States and the importation of merchandise contrary to law or its subsequent knowing handling. See *United States v. Westover*, 511 F.2d 1154, 1155 note 2 (9th Cir.), *cert. denied* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975). As explained in *Babb v. United States*, 218 F.2d 538, 539–540 (5th Cir. 1955), Section 545 is an amalgamation of two separate statutes of different origins, reflecting a long-standing Congressional purpose to treat as separate and distinct offenses the clandestine introduction of goods into this country by illegal means and the importation and handling of goods in violation of law.

A similar analysis is reflected in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Court sustained convictions under two counts based on a single sale of narcotics. Each count was charged under a different section of the statute, one prohibiting sales except in the original package bearing the required federal stamps, the other prohibiting sales without a written order of the purchaser on a form issued by the Internal Revenue Service. The Court there said:

"The statute is not aimed at sales of the forbidden drugs *qua* sales, a matter entirely beyond the authority of Congress, but at sales of such drugs in violation of the requirements set forth in sections 1 and 2, enacted as aids to the enforcement of the stamp tax imposed by the act." (284 U.S. at 304, 52 S.Ct. at 182)

See also, *Gore v. United States*, 357 U.S. 386, 390–391, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) (multiple counts for a single sale of narcotics alleged to violate different statutory prohibitions); *Callanan v. United States*, 364 U.S. 587, 597, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

3. The third factor to be considered is the nature of the proscribed conduct itself. As heretofore discussed, the making of false statements and the concealment of a material fact by trick, scheme and device are not distinctly different kinds of conduct. Not only are they regarded as within the conventional understanding of fraud but they may well merge into each other, blurring any conceptual distinctions one might otherwise find. Thus, in this case, the government charges that the making of a report which falsely states total gallons sold may also result in a device by which the true price per gallon is concealed. Reason and fairness support the conclusion that only one offense is charged.

4. The fourth factor concerns the appropriateness of multiple punishment for the conduct charged in the indictment. In the leading case of *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the Supreme Court laid down a presumption against construing penal statutes so as to lead to multiple punishment:

"When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." (349 U.S. at 83, 75 S.Ct. at 622)

■ The fact that a statute encompasses various modes of violation requiring different elements of proof—as is the case here—does not compel a different result. In *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), the Court held, under the bank robbery statute (18 U.S.C. Sec. 2113) which prohibits both bank robbery and entry with intent to commit robbery and requires proof of different facts for each, that only one punishment could be imposed for one entry. The Court reasoned that Congress' purpose was to permit conviction regardless of whether the robbery had been completed, not to pyramid punishment. Similarly, in *United States v. Sahley*, 526 F.2d 913, 918 (5th Cir. 1976), the Fifth Circuit held that under Sec. 1001 only one punishment could be imposed for a single document, although it contained several false statements. See also *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). Compare *Babb v. United States* and *Blockburger v. United States*, above.

In the absence of some evidence to the contrary, it is difficult to assume Congress intended that a defendant found guilty of falsifying one document be exposed to two or more sentences of up to five years imprisonment and a $10,000 fine each.

The foregoing analysis leads us to the conclusion that Congress, in enumerating several different types of fraudulent conduct in Section 1001, did not create separate and distinct offenses. We are satisfied that had the government used any particular false report as the basis for two counts, one charging a false statement and the other a concealment by trick, scheme or device, the indictment would be vulnerable to attack for multiplicity.

■ Once it is determined that the statute defines but a single offense, it becomes proper to charge the different means, denounced disjunctively in the statute, conjunctively in each count of the indictment. *United States v. Alsop*, 479 F.2d 65, 66 (9th Cir. 1973). Proof of any one of the allegations will sustain a conviction, (*Todorow v. United States*, 173 F.2d 439 (9th Cir.), *cert. denied*, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733 (1949)) but a judgment of guilty will bar any further prosecution with respect to any of the prohibited means embraced within the count. *Turf Center, Inc. v. United States*, 325 F.2d 793, 796 (9th Cir. 1963); 8 J. Moore, Federal Practice, para. 7.01(2) (2d ed. 1976); Rule 7(c)(1), Fed.Rules Crim.Pro. It is not a valid objection that the government has not disclosed its theory of proof in the indictment, see *United States v. Markee*, 425 F.2d 1043, 1047–1048 (9th Cir.), *cert. denied*, 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), nor that the jury, in arriving at a unanimous verdict, may not agree on the particular means by which the offense was committed.

## II. *Multiplicity*

■ Defendants have also contended that counts three through thirty are multiplicitous. Inasmuch as the District Judge dismissed the indictment as duplicitous, he did not reach this issue. It is appropriate for us to state our view on the issue, however, for the court's guidance on remand.

Defendants' contention is that submission of a false document to the government is an essential element of a violation of Section 1001. Accordingly, they argue, regardless of how many false documents may have been prepared, there are only as many offenses as there are submissions, and two or

more counts based on one submission are multiplicitous.

We are aware of only one decision on the issue.[3] In *United States v. Bettenhausen*, 499 F.2d 1223, 1234 (10th Cir. 1974), the Tenth Circuit rejected the same contention defendants make here. Congress, in Title 18, has clearly recognized the distinction between making false documents and passing them. See, e. g., 18 U.S.C. Secs. 471 and 472. We cannot read into Section 1001 an element which Congress did not articulate, i. e., submission of the document. That is sufficient reason to reject defendants' argument.

The order dismissing the indictment is vacated and the case is remanded for further proceedings in conformity with this decision.

---

**3.** Neither of the cases cited by defendants, *United States v. Rajewski*, 526 F.2d 149 (7th Cir.), *cert. denied* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), and *United States v. Sahley*, above, supports their position.