5 F.3d 544
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Len Don WHITMAN, aka Punky, Lynn Don Whitman and Punkie,
Defendant-Appellant.
 No. 92-10553.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 17, 1993.
Decided Aug. 31, 1993.
 
 Appeal from a Decision of the United States District Court for the District of Arizona; No. CR-91-162-PHX-EHC, Earl H. Carroll, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before FAIRCHILD,* BEEZER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Len Don Whitman, an Indian, appeals his convictions of offenses having taken place in Indian Country. Whitman raises the following issues: (1) whether election is an appropriate remedy where an indictment is duplicitous; (2) whether the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence upon which to convict; and (3) whether his statements, admissions and confessions were supported by sufficient independent corroboration. We affirm.
 
 I. PROCEDURAL BACKGROUND
 
 3
 On April 24, 1991, a grand jury returned a three-count indictment, charging Whitman with the felony murder of Lawrence John Anthrop during "the perpetration and attempted perpetration of a burglary and robbery" (Count 1); robbery (Count 2); and burglary in the first degree (Count 3). On the date of trial, Whitman's attorney argued that Count One of the indictment was duplicitous in that it charged the two predicate offenses for felony murder in the conjunctive. The district court denied Whitman's motion to dismiss Count One. Instead, the court permitted the government to elect robbery as the predicate offense for the felony-murder count, and an amended form of indictment was filed.
 
 
 4
 The jury returned guilty verdicts for felony murder, robbery as a lesser-included offense, and first degree burglary. The district court granted Whitman's motion to strike the robbery verdict. Whitman also filed a motion for judgment of acquittal, arguing that there was insufficient evidence on which to convict him on the remaining verdict. In particular, Whitman argued that there was insufficient evidence demonstrating that the deceased was the same person named in the indictment, both the cause and time of death, and the evidence connecting him with the crimes charged. The district court denied this motion. We discuss these contentions more fully below.
 
 
 5
 The court sentenced Whitman to a term of life imprisonment, 60 months supervised release, a $5,000.00 fine, and a $50.00 assessment on each count. Whitman filed a timely notice of appeal.
 
 II. DISCUSSION
 A. Duplicity in the Indictment
 
 6
 Whitman contends that Count One of the indictment is duplicitous, and that an election was an inadequate remedy. Matters relating to the sufficiency of an indictment are reviewed de novo. United States v. Powell, 423 U.S. 87 (1975); United States v. Yarbrough, 852 F.2d 1522, 1530 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 7
 An indictment is duplicitous where a single count joins two or more distinct and separate offenses. United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir.1976), cert. denied, 430 U.S. 966 (1977). However, "a count in an indictment is not improper if it simply charges the commission of a single offense by different means." United States v. Outpost Development Co., 552 F.2d 868, 869 (9th Cir.), cert. denied, 434 U.S. 965 (1977). To determine whether a particular charge is duplicitous, we look to the language of the statute, legislative history and statutory context, the nature of the proscribed conduct, and the appropriateness of multiple punishment for the conduct charged. UCO Oil, 546 F.2d at 836-38. See also United States v. Mal, 942 F.2d 682, 688 (9th Cir.1991).
 
 
 8
 Whitman was prosecuted under 18 U.S.C. Sec. 1111(a), which reads, in part:
 
 
 9
 Murder is the unlawful killing of a human being with malice aforethought. Every murder ... committed in the perpetration of, or attempt to perpetrate, any ... burglary or robbery .... is murder in the first degree.
 
 
 10
 Any other murder is murder in the second degree.
 
 
 11
 This statute, framed in a single paragraph and providing for a single penalty, does not suggest a congressional intent to create more than one offense. It appears "that Congress was concerned with proscribing the prohibited result rather than particular kinds of conduct." UCO Oil, 546 F.2d at 836. The statute here prohibits a single evil--that is, the unlawful killing of another with malice aforethought. We therefore interpret the conduct enumerated in Sec. 1111(a) as reflecting different modes of achieving that result, and not as separate and distinct offenses. Id. "Where, as here, a statute defines a single crime, it is proper 'to charge the different means, denounced disjunctively in the statute, conjunctively in each count of the indictment.' " Mal, 942 F.2d at 688 (quoting UCO Oil, 564 F.2d at 838). The indictment in this case is not duplicitous.
 
 
 12
 In any light, the government proceeded at trial only on a theory of murder in the perpetration of a robbery. Alteration of an indictment that is merely a correction of clerical errors and a reading out of surplusage is permitted as long as the defendant is not prejudiced thereby. United States v. Aguilar, 756 F.2d 1418, 1423 (9th Cir.1985). Election is an appropriate remedy where an indictment is found to be duplicitous and the election is an amendment of form (deletion of surplusage) rather than of substance (altering nature of the charge). Id.
 
 
 13
 Here, Whitman was aware that he was charged with murder in the perpetration of a robbery, and we must assume that the grand jury found probable cause for both the robbery and burglary predicates. The deletion of the burglary charge merely narrowed the charge against him. The prosecution elected the robbery theory prior to opening statements, thereby vitiating any confusion of the jury. Whitman was on notice of the charge of robbery, therefore cannot demonstrate any prejudice resulting from the election. We conclude that the use of an election in this case was appropriate.
 
 B. Sufficiency of the Evidence
 
 14
 A conviction must be affirmed if, "after weighing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Aceves-Rosales, 832 F.2d 1155, 1157 (9th Cir.1987), cert. denied, 484 U.S. 1077 (1988). The government is entitled to all reasonable inferences that may be drawn from the evidence. United States v. Johnson, 804 F.2d 1078, 1083 (9th Cir.1986). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991).
 
 
 15
 Whitman contends that his conviction cannot stand because the government's case was predicated upon mere suspicion and speculation. See United States v. Thomas, 453 F.2d 141, 143 (9th Cir.1971), cert. denied, 405 U.S. 1069 (1972). He raises a number of specific contentions, discussed below.
 
 1. Identity of Victim
 
 16
 Whitman first points out that the indictment charged the killing of a human being named Lawrence John Anthrop. He contends that in a prosecution for homicide, the government must prove "that the person assaulted or killed was the one named in the indictment." 40 C.J.S.Homicide Sec. 170. At trial, the government did not present a witness to identify the deceased as Anthrop,[1] but a death certificate in the name of Lawrence John Anthrop was received in evidence. Whitman argues that the government should have brought forth evidence to identify the deceased by name, such as dental records, hospital records, or testimony of an identification expert.
 
 
 17
 Here, the body of the victim was discovered by neighbors in the master bedroom of the Anthrop residence. Anthrop was a 71-year old frail man with a heart condition. He lived alone. Dr. Parks, the medical examiner, testified that, by comparing photographs, he could discern that the body he autopsied was the same body as found in Anthrop's home, and that this man had a heart condition. Moreover, the body had a number of injuries, including a wound to the hand, markings where the hands and feet had been bound, and a number of blunt wounds. These injuries tallied with Whitman's own version of events given to the FBI--that Anthrop cut his hands when he grabbed for a butcher knife used by Whitman, that Whitman had struck Anthrop with his fists, and that he had used socks to bind Anthrop's hands and feet together and had bound Anthrop's feet to the bed. These facts and the physical details provided by Whitman, including his identification of the victim by name ("I killed Larry Anthrop") in admissions to the FBI and a number of other individuals, provide ample circumstantial evidence from which the jury could reasonably conclude that the victim was, indeed, Lawrence Anthrop. We see no reason for any more exact proof of the name of the deceased. See 40 C.J.S.Homicide Sec. 300 (the identity of the person killed with the person alleged to have been killed can be established by circumstantial evidence).
 
 2. Cause and Time of Death
 
 18
 Whitman argues that the government failed to establish the cause and time of Anthrop's death. He first contends that because Dr. Parks could not state with certainty the precise cause of Anthrop's death, the death could have been due to Anthrop's heart condition. On the contrary, Dr. Parks testified that the death was most likely caused by "blunt and incised wounds, complicated by heart and lung disease." He further testified that the heart and lung disease, in and of itself, could not have been the cause of Anthrop's death. Viewed in the light most favorable to the prosecution, there was sufficient circumstantial evidence from which the jury could reasonably conclude that the injuries inflicted by Whitman caused Anthrop's death.
 
 
 19
 Second, Whitman contends that the prosecution did not establish the time of death, and there is a possibility that the death could have occurred during the time he was incarcerated at the Sacaton Jail. The indictment charged that the deceased had been killed on or about June 23, 1990. The body was found on June 25. Dr. Parks autopsied Anthrop on June 26, 1990, and testified that, in his opinion, Anthrop had been dead for "maybe a couple of days here" prior to his discovery. For a period of time in June 1990, Whitman was on escape status from the Pima Law Enforcement Facility at Sacaton, Arizona. Detention Officer Rebecca Kisto testified that she saw Whitman on June 22, 1990, and not again until June 29 when he was brought in for booking. Donna Rush, a neighbor of Anthrop's, testified that during the morning hours of June 24, she heard music and voices from Anthrop's residence, and observed his car driven away in a manner unlike the way in which Anthrop drives his car. Viewed in the light most favorable to the prosecution, there was sufficient circumstantial evidence from which the jury could conclude that Anthrop died during the period when Whitman was not incarcerated.
 
 3. Evidence Linking Whitman to the Crimes
 
 20
 Whitman further contends that there was insufficient evidence to connect him with the crimes charged, and that the only physical evidence linking him either with Anthrop's residence or his vehicle was a pellet gun he gave to his friend, Mario Antone (which Antone later turned over to authorities). He argues that this gun was never identified as having been the same gun as that from the Anthrop residence. This argument has no merit. Whitman's confession and statements to officers and others concerning the crimes were consistent with the physical evidence, such as the description of Anthrop's body, the condition of Anthrop's home after the murder, the items taken from Anthrop's residence and the condition and location of Anthrop's vehicle. Whitman discussed the details of the crimes with FBI Special Agent Leon Fish, and reiterated his story to BIA Investigator Greg Barnargas. In addition, prior to his arrest, Whitman admitted his involvement in Anthrop's murder and the robbery and recounted the details to Mario Antone (a life-long friend) Barry Sunna (Whitman's brother) and Ulysses Webb. Whitman's contention concerning the pellet gun also lacks merit. Della Morago testified that, in late June, she observed Whitman with Anthrop's gun. Viewed in the light most favorable to the prosecution, there was sufficient circumstantial evidence from which the jury could link Whitman to the crimes.
 
 
 21
 C. Independent Corroboration to Support Confessions
 
 
 22
 And finally, Whitman argues that the government's case lacks any independent proof, other than his confessions and admissions. It is well-settled "that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." Wong Sun v. United States, 371 U.S. 471, 488-89 (1963). "[T]he prosecution must introduce independent evidence 'tend[ing] to establish the trustworthiness of [a] statement' before it may rely on the statement as evidence of an element of the offense." United States v. Lopez-Alvarez, 970 F.2d 583, 589 (9th Cir.) (quoting Opper v. United States, 348 U.S. 84, 93 (1954)), cert. denied, 113 S.Ct. 504 (1992). "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." Opper, 348 U.S. at 93.
 
 
 23
 As discussed earlier, it is abundantly clear from the record that there was independent corroboration of Whitman's admissions to officers and others. Whitman's statements concerning the manner in which he murdered Anthrop coincide with the physical evidence found at the scene of the crime.
 
 
 24
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Thomas E. Fairchild, Senior Circuit Judge, Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Whitman filed a motion for judgment of acquittal on this point. The district court found that "it would have been a simpler matter ... to have someone who knew Mr. Anthrop come in and say they went to the funeral, they saw him, that's the body on the floor." However, the court concluded that the admission of the death certificate would suffice and denied Whitman's Rule 29 motion. RT at 381; ER at 8