**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

MANUEL TISCORENA RENTERIA,
           *Defendant-Appellant.*

No. 07-50471

D.C. No.
CR-04-00138-LAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
December 10, 2008—Pasadena, California

Filed February 20, 2009

Before: Harry Pregerson, Dorothy W. Nelson and
David R. Thompson, Circuit Judges.

Opinion by Judge Thompson

**COUNSEL**

Kyle W. Hoffman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

David Zugman, San Diego, California, for the defendant-appellant.

**OPINION**

THOMPSON, Senior Circuit Judge:

A jury convicted appellant, Manuel Tiscorena Renteria ("Renteria"), of maliciously damaging a building and real property, the Congregation Beth Am Synagogue, used in interstate and foreign commerce, in violation of 18 U.S.C. § 844(i). We reversed that conviction and remanded for a new trial because of an improper jury instruction. Renteria was retried and a jury again found him guilty. In this present appeal, he contends that (1) the jurisdictional element of 18 U.S.C. § 844(i) was not adequately alleged in the indictment; (2) a unanimity instruction was improperly withheld; and (3)

insufficient evidence was presented for a conviction. We disagree and affirm his conviction.

## I  *Background*

The synagogue Renteria was convicted of burning was part of a complex of buildings, totaling 20,000-24,000 square feet located on approximately 4 acres. The complex included a sanctuary, social hall, gift shop, and preschool daycare center. The gift shop was located around 10 to 15 feet from the synagogue doors where the fire occurred. A preschool teacher at the synagogue also ran the gift shop for her own profit. She had an agreement with the synagogue to pay a monthly rent of $400. She would sell goods and keep the profit. The gift shop was open to the public Monday, Wednesday, and Thursday afternoons from 3:30 to 7:00, and Sunday mornings from 8:30 to 12:45. In October 2003, the gift shop was selling between $1,200 and $1,500 worth of goods each month, and more during certain months and holidays. The synagogue had an internet link to the gift shop on its website.

The preschool operated by the synagogue was attended by children of synagogue members and nonmembers. The fee for each child attending the preschool five days a week was around $5,000 a year. The synagogue employed preschool teachers and paid them approximately $16- $17 per hour on average. The teachers did not need to be Jewish or members of the synagogue.

In his first appeal, Renteria contended the indictment was defective because it failed to allege a "substantial" effect on interstate commerce, which he argued, was a necessary element of a violation of 18 U.S.C. § 844(i). He also contended evidence presented at his trial was insufficient to prove a § 844(i) violation, and one of the jury instructions was improper.

We reversed Renteria's first conviction because the challenged jury instruction was improper. *United States v. Ren-*

*teria*, 187 F. App'x 704 (9th Cir. 2006). In that decision, we also addressed Renteria's additional two arguments. *Id.* We concluded it was not necessary to include in the indictment an allegation that the impact on interstate commerce was "substantial," and that the evidence was sufficient for conviction. *See id.*

After remand following the first appeal, Renteria moved to dismiss the indictment on the grounds that there was a lack of nexus to interstate commerce and the indictment was duplicitous. The district court denied the motion. The case went to trial and Renteria was found guilty again. This appeal followed.

## II   *Discussion*

### A.   *Allegation of Jurisdictional Element*

The first issue we consider is whether the jurisdictional element of 18 U.S.C. § 844(i) was alleged appropriately in the indictment. Generally, the adequacy of an indictment is reviewed de novo. *United States v. Rodriguez-Rodriguez,* 364 F.3d 1142, 1145 (9th Cir. 2004), *amended and superseded on other* grounds, 393 F.3d 849 (9th Cir. 2005).

The Indictment states:

> On or about October 11, 2003, within the Southern District of California, defendant MANUEL TISCARENO-RENTERIA did maliciously damage, by means of fire, the building and real property known as Congregation Beth Am Synagogue, 5050 Del Mar Heights Road, San Diego, California, **which was used in interstate and foreign commerce, and in an activity affecting interstate and foreign commerce**; in violation of Title 18, United States Code, Section 844(i). (Emphasis added.)

The relevant language of § 844(i) provides:

(I) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property **used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce** shall be imprisoned . . . .

18 U.S.C. § 844(i) (emphasis added).

Renteria argues the allegation in the indictment, "used in interstate and foreign commerce, and in an activity affecting interstate and foreign commerce," does not adequately allege federal jurisdiction. He contends (1) the phrase "used . . . in an activity affecting interstate and foreign commerce" is insufficient because it leaves out the modifier "substantially" and (2) the phrase "used in interstate and foreign commerce" is insufficient because more allegations are required to explain how the synagogue could have an impact on interstate commerce.

1. *Law of the Case*

**[1]** The "law of the case" doctrine provides that "one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *United States v. Scrivner,* 189 F.3d 825, 827 (9th Cir. 1999), (quoting *Merritt v. Mackey,* 932 F.2d 1317, 1320 (9th Cir. 1991)). We will not apply "law of the case" however if (1) the first decision was clearly erroneous; (2) there has been an intervening change in the law; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Outside of one of these circumstances, the failure to apply the doctrine is an abuse of discretion. *Id.*

Renteria argues the indictment is defective because it failed to allege the synagogue had a "substantial" effect on interstate commerce. Renteria challenged the indictment on this same ground in his first appeal, and we rejected his argument stating:

> Renteria argues that the indictment itself was defective because it did not allege that his conduct had a "substantial" effect on commerce. The requirement that the effect on commerce be "substantial" is not in the text of § 844(i), but is a judicial gloss upon the statutory language. *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir. 1995). The indictment tracked the language of the statute, and adequately informed Renteria of the charge he had to meet. An indictment that follows the statutory language, and otherwise puts the accused on fair notice of all the implied elements of the charge, is not also required to incorporate judicial decisions that have interpreted that language. *United States v. Godinez-Rabadan*, 289 F.3d 630, 634 (9th Cir. 2002). The indictment was not required to allege that the impact on commerce was "substantial."

*Renteria,* 187 F. App'x. at 706.

**[2]** In Renteria's first appeal, we rejected the same argument he makes in this present appeal. Because none of the exceptions to the "law of the case" doctrine exist, we will not consider Renteria's renewed argument that the indictment should have alleged that the synagogue "substantially" affected interstate or foreign commerce.

2. *Allegations of Effect on Interstate or Foreign Commerce*

**[3]** In *Jones v. United States,* 529 U.S. 848, 854 (2000), the Supreme Court held that Congress never intended to exercise

its full power under the Commerce Clause in 18 U.S.C. § 844(i) because it contains the phrase "used in" to qualify a commerce-affecting activity. Upon an analysis of § 844(i), the Court determined that "[t]he proper inquiry . . . is into the function of the building itself, and then a determination of whether that function affects interstate commerce." *Id.* (internal quotations omitted). The Court then concluded that the owner-occupied private residence involved in that case was not used in any commercial activity, and arson of such a building was outside the reach of 18 U.S.C. § 844(i). *Id.* at 859.

Renteria argues the indictment in his case is defective because it does not allege facts showing how ancillary functions of the synagogue affected interstate or foreign commerce. It is Renteria's position that, because a house of worship is not normally used for commercial purposes, the indictment must include language specifying how the building's use affects commerce. We disagree.

In *United States v. Lamont,* 330 F.3d 1249 (9th Cir. 2003),[1] the issue was whether 18 U.S.C. § 844(i) applied to arson of a church. We followed the two-step process set out in *Jones* for determining whether arson of a church building could be prosecuted under § 844(i). *Id*. at 1252. First, we examined the function of the building. Then, we determined whether that function affected interstate commerce. *Id*. There were no additional pleading requirements because the building on which arson was committed happened to be a church. *Id*.

**[4]** Renteria's contention for a heightened requirement for allegations in an indictment when the alleged violation of

---

[1] Renteria cites to *Lamont* for the proposition that a house of worship is not normally used for commercial purposes, but cites to no authority in support of his claim that specific connections to interstate or foreign commerce must be included in the indictment if the violation of § 844(i) involves a house of worship.

§ 844(i) involves a house of worship has no support in the statute or elsewhere. Such heightened allegations are not necessary.

### B. *Withholding of Unanimity Instruction*

The next issue is whether the indictment should have been dismissed because it was duplicitous and whether the district court should have given the jury a unanimity instruction.

**[5]** An indictment is considered duplicitous if a single count combines two or more different offenses. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976). A danger of duplicity is that a jury could find a defendant guilty on a count without reaching a unanimous verdict on the commission of an offense. *Id.*

Renteria contends that the allegation, "used in interstate and foreign commerce, and in an activity affecting interstate commerce," contains two separate offenses and the indictment, therefore, is duplicitous. It is Renteria's position that, because the district court refused to give a unanimity instruction and used a general verdict form, it is unknown whether the jurors arrived at a unanimous verdict. This argument lacks merit. The indictment is not duplicitous and no unanimity instruction was required.

**[6]** Some crimes can be committed by several alternative means. It is proper for the government to charge different means of a crime connected by conjunctions in the indictment when the means are listed disjunctively in the statute. *Id.* at 838. The allegation of the count at issue, "used in interstate and foreign commerce, and in an activity affecting interstate or foreign commerce," describes a single element. The allegation follows the language of the statute but includes "and" instead of "or" between the two methods of meeting the interstate/foreign commerce element of 18 U.S.C. § 844(i). That statute requires the following elements for a violation

such as that charged in this case: a defendant must (1) maliciously; (2) damage or destroy a building; (3) by means of fire; and (4) the building must have been "**used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.**" 18 U.S.C. § 844(i) (emphasis added). "When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt." *United States v. Urrutia,* 897 F.2d 430, 432 (9th Cir. 1990) (citations omitted).

The district court instructed the jury that the fourth element of § 844(i) was:

> that the building or other property that was damaged or destroyed was used in interstate or foreign commerce or in any activity substantially affecting interstate or foreign commerce. What the fourth element means is this: a building is used in an activity substantially affecting interstate commerce if the building is actively used for commercial purposes and not merely having a passive connection to commerce. Ordinarily, a religious house of worship would not be involved in an activity affecting commerce because a house of worship exists for religious purposes and not for having activities that are commercial or economic in character. However, a house of worship may affect interstate commerce if it takes on economic functions unrelated to worship.

**[7]** The wording of this instruction is not open to jury confusion. The indictment is not duplicitous and the district court did not err in failing to give a unanimity instruction. *See United States v. Parker,* 991 F.2d 1493, 1498 (9th Cir. 1993).

## C.   *Evidence Supporting Conviction*

The final issue is whether sufficient evidence was presented for Renteria's conviction of violating 18 U.S.C. § 844(i).

In the first appeal, we summarized the following facts which had been established:

> The evidence presented showed that the gift shop space was rented by the Synagogue to an independent third party at a fixed monthly rate. The shop averaged $2,000 to $3,000 a month in sales of goods from throughout the United States and Israel. The gift shop was open to the public for walk-in sales and also filled orders placed over the telephone and internet.

*Renteria*, 187 F. App'x at 707.

Different evidence was presented at the second trial. At the second trial, the evidence included proof that (1) the synagogue rented the gift shop to an independent third party at a fixed monthly rent; (2) the gift shop sold $1,200 to $1,500 worth of goods each month and more during certain months and holidays; (3) the gift shop was open to the general public; and (4) the synagogue had an internet link to the gift shop on its website that listed the hours of operation, telephone number, and items for sale.

Further, in the second trial, the government introduced evidence pertaining to the preschool daycare center. Children of synagogue members and non-members attended the center. For children who attended 5 days each week, the fee was approximately $5,000 a year. Teachers employed by the synagogue were paid $16 to $17 an hour on average. To work as a teacher, one did not need to be Jewish or a member of the synagogue.

Renteria argues the evidence was insufficient to support his conviction because (1) testimony by the synagogue's Executive Director, Michael Moskowitz, was hearsay and thus was improperly-admitted into evidence; (2) there was no evidence regarding how much of the gift shop's sales could be attri-

buted to non-religious items, and the gift shop had a substantial relationship to the synagogue's religious mission; and (3) the operation of the gift shop could not be used to satisfy the federal jurisdictional requirement as to commercial use of the synagogue building.

### 1. *Testimony of Moskowitz*

Moskowitz was the Executive Director of the synagogue. As part of his duties, he oversaw the finances, security, accounting, and other non-religious matters for the synagogue.

[8] Moskowitz's testimony was not hearsay. He was the individual with direct knowledge of activities taking place at the synagogue, the synagogue's preschool daycare center, the fee charged for the daycare services, availability of services to non-members, how the gift shop was run, the profit made at the gift shop, the rent charged for the gift shop space, the terms of the contract regarding the gift shop, the merchandise for sale at the shop, and the available methods for purchase of such merchandise. Moskowitz's testimony was properly admitted into evidence.

### 2. *Religious Nature of Gift Shop*

[9] Renteria argues the gift shop's operation cannot be considered a link to interstate or foreign commerce because no evidence was presented as to how much of the shop's sales pertained to religious items and because the gift shop operated in furtherance of the synagogue's religious mission. These contentions are irrelevant. While a house of worship may engage in activities that primarily further worship, it may also engage in other activities that are commercial in nature. *United States v. Grassie,* 237 F.3d 1199, 1210 (10th Cir. 2001). The fact that the gift shop's sales may further the synagogue's religious purposes does not take the shop's operation out of the realm of commercial activity. The district court did

not err in considering the activities of the gift shop in determining the synagogue's link to interstate or foreign commerce.

### 3.  *Nexus to Interstate or Foreign Commerce*

Renteria contends that the synagogue's operation, by itself, could not possibly fulfill the commercial jurisdictional element of 18 U.S.C. § 844(i), and the ancillary functions of the gift shop and the preschool cannot bring the synagogue's religious operations within § 844(i)'s commercial activity requirement.

[10] Although not addressed in this circuit, *see Lamont,* 330 F.3d at 1255, the Tenth, Sixth, and Fourth Circuits have held that certain religious buildings have fallen within the commercial activity requirement of § 844(i) through ancillary activities such as daycare, radio stations, and gift shops. *United States v. Gillespie,* 452 F.3d 1183 (10th Cir. 2006); *United States v. Rayborn,* 312 F.3d 229 (6th Cir. 2002); *United States v. Terry,* 257 F.3d 366 (4th Cir. 2001).

*Gillespie* from the Tenth Circuit is directly on point on this issue. That case involved the fire-bombing of the outside door alcove of a Jewish synagogue in Oklahoma City, Oklahoma, and a prosecution under 18 U.S.C. § 844(i). *Gillespie,* 452 F.3d at 1185. On appeal following his conviction, Gillespie argued that insufficient evidence was introduced to support the jury's conclusion that the synagogue was a building used in or affecting an activity in interstate commerce within the meaning of § 844(i). *Id.* at 1186. The court recognized that the synagogue operated as a place of worship, but that it had additional functions, including the operation of a preschool and a gift shop. *Id.* at 1188. These additional functions constituted commercial use such that the function of the building affected interstate commerce. *Id.*; *see also U. S. v. Terry*, 257 F.3d at 369-70.

**[11]** Viewing the evidence in the present case concerning the operation of the gift shop and the preschool daycare center in the light most favorable to the government, a rational trier of fact could have found that these commercial uses were not passive, passing, or past connections to commerce and that the synagogue was used for interstate or foreign commercial purposes in addition to religious purposes. The evidence presented was sufficient to support Renteria's conviction under 18 U.S.C. § 844(i).

**AFFIRMED.**