**UNITED STATES of America**

v.

**Ronald Henderson BLACKLEY, Defendant.**

**No. Crim. A.97–166 (RCL).**

United States District Court, District of Columbia.

Nov. 12, 1997.

608

Donald C. Smaltz, William F. Fahey, Charles Kagay, Trent Harkrader, Office of Independent Counsel, Alexandria, VA, for Plaintiff.

Sheldon Krantz, Elizabeth R. Dewey, Piper & Marbury, L.L.P., Washington, DC, Hiram Eastland, Eastland Law Offices, Jeff Jacobwitz, Jacobwitz Law Firm, Joseph C. Langston, Langston, Langston, Michell & Bowen, P.A., for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendant's Motion to Dismiss Indictment of Ronald Henderson Blackley pursuant to Fed. R. Crim P. 12(b). For the reasons stated in this Memorandum Opinion, defendant's motion is denied.

## I. BACKGROUND

A. The Chronology Leading Up to the Motion to Dismiss

On August 8, 1994, Attorney General Janet Reno applied for the appointment of an Independent Counsel under 28 U.S.C. § 592(c)(1) "to investigate whether any violations of federal criminal law were committed by Secretary of Agriculture Alphonso Michael (Mike) Espy, and to determine whether prosecution is warranted." On September 9, 1994, the

Special Division for the Purpose of Appointing Independent Counsels of the United States Court of Appeals for the District of Columbia ("Special Division") appointed Donald C. Smaltz as Independent Counsel with the power, authority and jurisdiction to investigate:

whether Alphonso Michael (Mike) Espy, Secretary of Agriculture, has committed a violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, relating in any way to the acceptance of gifts by him from organizations and individuals with business pending before the Department of Agriculture.

other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, by any organization or individual developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation.

any violation of 28 U.S.C. § 1826, or any obstruction of the due administration of justice, or any material false testimony or statement in violation of federal criminal law, in connection with any investigation of the matters described above.

[and] to seek indictments and to prosecute any organizations or individuals involved in any of the matters described above, who are reasonably believed to have committed a violation of any federal criminal law arising out of such matters, including organizations or individuals who have engaged in an unlawful conspiracy or who have aided and abetted any federal offense.

Under the authority of 28 U.S.C. § 594, the Special Division also granted the Independent Counsel the prosecutorial jurisdiction to fully investigate and prosecute "all matters and individuals whose acts may be related to that subject matter, inclusive of authority to investigate and prosecute federal crimes (other than those classified as Class B or C misdemeanors or infractions) that may arise out of the above described matter, including perjury, obstruction of justice, destruction of justice and intimidation of witnesses."

On January 25, 1996, the Independent Counsel filed under seal an Application for Referral of a Related Matter with the Special Division. This application was opposed by the Attorney General. Pursuant to 28 U.S.C. § 594(e), the Special Division granted the Independent Counsel's application on April 14, 1996, ordering referral of the related matter, and granting the following investigative and prosecutorial jurisdiction:

The jurisdiction and authority to investigate and prosecute any violation of any federal law, other than a Class B or C misdemeanor, by any organization or individual, related to any application, appeal or request for subsidy made to or considered by the United States Department of Agriculture, for which Secretary of Agriculture Alphonso Michael (Mike) Espy and/or his Chief of Staff Ronald Blackley intervened in the application, approval, or review process.

In support of its grant of referral jurisdiction, the Special Division noted that Independent Counsel Smaltz had shown that the new matter was "demonstrably related to the factual circumstances that gave rise to the Attorney General's initial investigation and request for appointment of an independent counsel." *In re Espy,* 80 F.3d 501, 509 (D.C.Cir.1996). Specifically, the Special Division noted "He [IC Smaltz] has identified evidence allegedly showing a pattern of conduct involving payments or gifts to Espy and his close associates in return for favorable treatment by the Department of Agriculture." *Id.*

On April 22, 1997, a federal grand jury in the District of Columbia returned a three-count indictment against defendant Ronald Henderson Blackley, former Chief of Staff to Secretary of Agriculture Mike Espy. Specifically, it is alleged that Charles Fuller, a longtime friend and business associate of Mr. Blackley, caused to be made payments in the amount of $21,025 to Mr. Blackley and his wife Sharon Blackley between the dates of January 5, 1993 and December 15, 1993. Also, on or about May 22, 1993, Charles ("Buddy") Cochran, the owner and operator of a farming operation known as "Coco Planting Company" gave defendant Blackley and/or Sharon Blackley a check for $1,000 payable to Ron Blackley Jr., which was later deposited into the joint checking account of

Ronald and Sharon Blackley. Both Fuller and Cochran sought and received monetary subsidies from the Department of Agriculture ("USDA") in 1993, the former receiving $63,000, and the latter $284,000.

In the first count of the indictment, the grand jury charged Blackley with knowingly and willfully making false, fictitious and fraudulent statements and representations for his failure to report the receipt of the $22,025 on his Public Financial Disclosure Report for 1993 ("Form SF 278"), in violation of the Ethics in Government Act, 18 U.S.C. § 1001. In the second count, it is alleged that Mr. Blackley signed a sworn declaration as part of the Department of Agriculture's Office of Inspector General's ("USDA–OIG") investigation of him that contained a false statement concerning his alleged receipt of aforementioned payments, also in violation of 18 U.S.C. § 1001. In the third count, Mr. Blackley is again charged with a violation of 18 U.S.C. § 1001 for a false statement regarding his alleged receipt of the aforementioned payments in a sworn declaration taken as part of a United States Agency for International Development Office of Inspector General ("US AID–OIG") investigation as to whether he should retain his Top Secret security clearance.

### B. The Motion to Dismiss

Mr. Blackley asks this court to dismiss the indictment, contending that the Independent Counsel is without jurisdiction to prosecute the aforementioned charges. He asserts that his prosecution is not about illegal gifts to Mike Espy, nor about improper intervention into the application, approval or review of Department of Agriculture subsidies. Therefore it does not charge misconduct cognizable under "the limited prosecutorial authority granted to the Independent Counsel." Supplemental Memorandum in Support of the Motion to Dismiss Based on Lack of Jurisdiction ("Supplemental Memorandum") at 2. He contends that the charges against him involve nothing more than the completeness of his 1993 financial disclosure statement, a matter he claims to be completely outside of the purview of the Special Division's jurisdictional grant, which is limited to charges concerning intervention in subsidy applications, appeals, and requests and federal criminal violations related to such interventions.

Defendant offers three specific challenges in support of his motion to dismiss the indictment. First, he alleges that there is not a sufficient connection or the requisite degree of relatedness between the offenses charged in the indictment and the Special Division's grant of jurisdiction. Second, he contends that this prosecution is statutorily impermissible because it is contrary to established Department of Justice policy proscribing prosecution of alleged violations of 18 U.S.C. § 1001, "unless the nondisclosure conceals significant underlying wrongdoing." Defendant claims that under section 594(f)(1) of the Ethics in Government Act, an Independent Counsel is required to comply with the written and established policies of the Department of Justice respecting the enforcement of the criminal laws. This prosecution, Blackley claims, contravenes that DOJ policy and therefore the indictment must be dismissed as violative of section 594(f)(1). Finally, defendant's original Motion to Dismiss challenges the constitutionality of the Special Division's referral order. Defendant essentially argues that a referral of a related matter under section 594(e) is unconstitutional in cases in which the Attorney General specifically opposes the Independent Counsel's request. Each of these challenges will be addressed in turn.

## II. ANALYSIS

### A. The Argument That The Indictment Itself Fails to Demonstrate a Connection Between the Offense Charged and the Independent Counsel's Jurisdiction.

Mr. Blackley contends that there is no demonstrable causal or logical connection between the 18 U.S.C. § 1001 false statement violations alleged in the indictment and either the scope of the original mandate or the subsequent referred matter. Defendant argues that, "[i]f the alleged false statements charged in the Indictment fall within this aspect of the mandate [intervention in subsidy applications, appeals or review], the Indictment certainly does not allege it" and "if

gifts to Secretary Espy are the predicate for Mr. Blackley's allegedly false statements, there is no indication of it in the Indictment." Supplemental Memorandum at 5. Defendant essentially argues that the relationship between the jurisdictional mandate and the charges brought by the Independent Counsel must be demonstrated in the language of the indictment, with something tantamount to a "statement of relatedness" establishing the required connection. Restated, Mr. Blackley contends that the failure to facially demonstrate the logical relationship between the charges brought and the limited prosecutorial scope of the Special Division's order is fatal to the indictment.

As a threshold matter, the scope of the phrase "related to" in the context of the connection that must exist between an indictment and the jurisdictional mandate has been addressed by this district. In *United States v. Secord*, 725 F.Supp. 563 (D.D.C.1989), the Independent Counsel obtained an indictment against General Richard V. Secord for perjury and obstruction arising out of Secord's testimony before Congress in connection with the Iran–Contra hearings. As in the instant case, Secord argued that the prosecution of perjury counts fell outside the jurisdiction granted to the Independent Counsel. The question before then-Chief Judge Aubrey E. Robinson, Jr. was whether the alleged perjury was "related to in any way" to the *events* specified in the Special Division's Order. *Id.* at 564. The court answered the question in the affirmative, stating, "Clearly, the answer is yes. It cannot be denied that the congressional investigation itself 'arose from' the events constituting the Iran–Contra initiative." *Id.* Because General Secord's congressional testimony was on the topic of Iran–Contra, and because his alleged perjury might have been motivated by a desire to conceal his role in the Iran–Contra affair, the court found the requisite degree of relatedness between the charges in the indictment and the subject matter of the Independent Counsel's jurisdiction to conclude that prosecutorial jurisdiction was proper. Significantly, the *Poindexter* court also noted that "[t]o demonstrate that one occurrence is 'related' to another, [the OIC] need only show that there is reasonable causal or logical connec-

tion between the two, some tenable correlation between events." *Id.* at 566.

At least two prosecutions brought by Independent Counsel Smaltz in conjunction with the Mike Espy investigation have been challenged on jurisdictional grounds, with defendants claiming in both instances that the charges in the indictment were insufficiently related to the authority granted the Independent Counsel by the Special Division. In *United States v. Crop Growers Corp.*, 954 F.Supp. 335, 341–42 (D.D.C.1997), the court found a legally sufficient relationship between illegal campaign contributions to Mike Espy's brother Henry and the Independent Counsel's mandate. Applying the above-cited *Secord* standard for "relatedness," ("a reasonable causal and logical connection") the court determined that "allegations that an organization with business pending before the Department of Agriculture made an illegal campaign contribution to Secretary Espy's brother to curry favor with the Secretary falls within the mandate of that Appointment Order." *Id.* at 342. The court concluded that a contribution to Henry Espy's campaign by one who had business before the Department of Agriculture could potentially influence the Secretary to intervene on behalf of the gift-giver. Consequently, the charged conduct—the campaign contribution—was causally and logically connected to the Special Division's jurisdictional grant—improper influence on the Secretary of Agriculture—and defendant's challenge to the indictment was denied.

Similarly, in *United States v. Sun–Diamond Growers of California*, 941 F.Supp. 1262 (D.D.C.1996) defendants argued that seven counts in their indictments alleging a scheme to make unlawful corporate contributions to Henry Espy did not relate specifically to the subject of gratuities, and therefore exceeded the Independent Counsel's jurisdiction. *Id.* at 1272. The court rejected this claim, holding that the counts in question were related to the original subject matter of the investigation, noting that "[t]he factual predicate is intertwined with the original core subject matter of the Attorney General's original investigation as well as the subsequent related referral ... " *Id.* at 1274.

Again, the court found the requisite "causal and logical connection" between individuals or organizations who helped retire Henry Espy's campaign debt via allegedly illegal contributions and the potential for improper influence upon Secretary Espy such that the Independent Counsel's jurisdiction over the challenged counts was properly exercised.

■ Significantly, in making these determinations of relatedness, neither the *Secord* nor *Sun–Diamond Growers* nor *Crop–Growers* courts required what defendant appears to be calling for here—that the text of the indictment provides the demonstrable causal and logical connection between the charged violations and the subject matter of the Independent Counsel's investigation. None of the case law even remotely suggests that the grand jury's failure to facially demonstrate relatedness is fatal to the sufficiency of the indictment. In fact, at least one of the aforementioned cases implies the opposite. "The relationship must be "demonstrable," that is, something that is evident initially and without great steps of logic. *The courts are routinely called upon to draw lines, and this is simply another of those cases ..."* *Secord*, 725 F.Supp. at 567 (emphasis added). In each instance, the courts considered the Special Division's order, the challenged counts, and reached a conclusion as to whether the requirement of relatedness was satisfied. This court will now do the same in determining whether the language of the original order and/or the referred matter supports the Independent Counsel's prosecution of charges arising exclusively under 18 U.S.C. § 1001.

■ Though the Blackley prosecution is arguably within the scope of the Special Division's original jurisdictional grant, the connection is more easily demonstrated by reference to the referred matter; consequently, this court will limit its consideration to that order. The April 1996 referral order permits the Independent Counsel to investigate and prosecute any violation of any federal law *"related to* any application, appeal, or request for subsidy ... for which ... Chief of Staff Ronald Blackley intervened in the application, approval or review process." Each count in the indictment contends that Ronald Blackley made a false statement by failing to disclose his receipt of payments totaling $22,025, first on his Form SF–278, then pursuant to the USDA–OIG sworn declaration, and finally, pursuant to the U.S. AID–OIG sworn declaration. The background section of the indictment explains that this income was allegedly received from Mr. Fuller & Mr. Cochran, who both sought and received subsidies from the Department of Agriculture in 1993, the same year in which the alleged payments were received by Blackley. Though defendant cannot discern the "reasonable causal or logical connection" between the alleged false statements and the jurisdictional mandate, this court can. An endeavor to conceal payments received from a Department of Agriculture subsidy applicant could be a causal consequence of possible intervention in the application process on behalf of those from whom he received payment. It is both logical and reasonable to surmise that if Ronald Blackley improperly intervened in either Fuller and/or Cochran's subsidy application, approval or review, and received payments in anticipation of or as a result of that intervention, he would not report such "income" on financial disclosure forms, or answer truthfully as to whether he received such payments when interviewed by USDA or U.S. AID investigators.

A finding of relatedness based upon this type of inference is not without precedent in this district. In finding that General Secord's indictment was within the scope of the Special Division's jurisdictional mandate in *Secord*, Judge Robinson concluded that "[d]efendant's alleged perjury could well be construed as part of a *continuing effort* to conceal the extent and detail of the "enterprise," " *Secord*, 725 F.Supp. at 566 (emphasis added). If one substitutes the words "falsification of financial statements" for the word "perjury" in the above excerpt, the similarities between *Secord* and the instant case become patently apparent. If Mr. Blackley did, in fact, attempt to intervene in subsidy applications or reviews on behalf of Fuller or Cochran, the alleged falsifications on his financial disclosure form and on the two sworn declarations could logically be part of a "continuing enterprise" to conceal

his intervention. That nexus is sufficient to provide the "reasonable causal or logical connection" and the "tenable correlation between events" that is required to support the Independent Counsel's prosecution of these charges.

This court is satisfied that the three 18 U.S.C. § 1001 charges against Ronald Blackley are sufficiently related to the Special Division's jurisdictional grant in the referred matter. Therefore, this court will not grant defendant's motion to dismiss the indictment on the basis that the Independent Counsel has acted in excess of its defined jurisdiction.

B. The Argument That The Prosecution of this Case By the Independent Counsel Circumvents Established Department of Justice Policy.

Under section 594(f)(1) of the Ethics in Government Act, an Independent Counsel:

shall, except to the extent that to do so would be inconsistent with the purposes of this chapter, comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws. To determine these policies ... the independent counsel shall, except to the extent that doing so would be inconsistent with the purposes of this chapter, consult with the Department of Justice.

The rationale underlying the promulgation of this addition to the Independent Counsel statute was to ensure that an Independent Counsel's prosecutorial jurisdiction is subject to some safeguards against overreaching and abuse. "The intent of this change is to create a presumption that the special prosecutor will follow prosecutorial guidelines unless extenuating circumstances exist." Sen. Rep. No. 97–496, at 16 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3552. At the same time, it also alleviates some of the concern that the Independent Counsel law may be unconstitutional because it violates the doctrine of separation of powers. *See Morrison v. Olson*, 487 U.S. 654, 696, 108 S.Ct. 2597, 2621–22, 101 L.Ed.2d 569 (1988) (noting that adherence to Justice Department policies unless not possible to do so does "give the Attorney General [a] means of supervising and control-

ling the prosecutorial powers that may be wielded by an Independent Counsel").

Defendant contends that his indictment cannot be sustained because it is in contravention of DOJ policy and therefore violates section 594(f)(1). The Department of Justice Manual directs its prosecutors "not to prosecute an EIGA [Ethics in Government Act] violation under section 1001 *unless* the nondisclosure conceals significant underlying wrongdoing." Department of Justice Manual at 9–85A.304. Mr. Blackley argues that because it is contrary to DOJ policy to bring an 18 U.S.C. § 1001 indictment for a financial non-disclosure in the amount of $22,000, the Independent Counsel is statutorily proscribed from doing so. In other words, defendant contends that section 594(f)(1) gives DOJ prosecutorial policy the force of law when applied to the Independent Counsel, even though it is conceded that the same policies are merely discretionary when applied to executive branch prosecutors. *See United States v. Poindexter*, 725 F.Supp. 13, 38 (D.D.C.1989) (citing *United States v. Busher*, 817 F.2d 1409, 1411–12 (9th Cir. 1987) (holding that the decision to prosecute a violation of the law cannot be deemed flagrant misconduct, and noting that "The U.S. Attorney's Manual ... is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.")).

A section 594(f) challenge to an Independent Counsel indictment has been raised in this district at least once before, and rejected. In *United States v. Poindexter*, 725 F.Supp. 13, 38 (D.D.C.1989), defendant John M. Poindexter sought to have charges dismissed because the indictment was inconsistent with the prosecutorial policies of the Department of Justice. The court found this claim to be without merit, explaining:

The very nature of the Independent Counsel's responsibilities suggests that it may not always be possible for him to follow those policies, and it is for that very reason that the Independent Counsel statute explicitly provides that he is required to fol-

low Department of Justice policies "only to the extent possible."

*Id.* (footnotes omitted). *Poindexter* therefore holds that while there is a general presumption that an Independent Counsel should follow the policies and procedures of DOJ, the plain text of section 594(f)(1) indicates that it is not an absolute, lock-step requirement. In some circumstances, it is expected that the Independent Counsel will depart from the guidelines and seek indictments that would not normally be brought by a United States Attorney.

This court agrees with both the *Poindexter* holding and the logic underlying it as to whether an Independent Counsel is bound by statute to follow established DOJ policy in all cases. It is undeniable that Congress's addition of section 594(f) to the Independent Counsel statute in 1982 created somewhat of a paradox between that provision's purpose and the rationale underlying the overall Independent Counsel framework. On the one hand, through section 594(f)(1), Congress is ensuring that there are not two different standards of justice depending on the prosecutor; that "treatment of officials is equal to that given to ordinary citizens under similar circumstances." Sen. Rep. No. 97–496, at 16 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3552. To prevent against public officials being subject to potentially capricious prosecutorial conduct, an Independent Counsel needs to be tethered to some quantifiable standard, and the Department of Justice policy guidelines provide arguably the most complete, detailed and time-tested standards available. Furthermore, as explained above, adherence to the executive branch's established prosecutorial guidelines helps to guard against constitutional separation-of-powers challenges to the Independent Counsel statute. *See Morrison,* 487 U.S. at 696, 108 S.Ct. at 2621–22.

On the other hand, if an Independent Counsel is supposed to operate as nothing more than the identical twin of the Department of Justice, with *no* permissible variance in prosecutorial discretion, then the need for the Independent Counsel structure becomes

highly questionable. Underlying the Attorney General's decision to proceed under 28 U.S.C. § 592 and invoke the Independent Counsel statute is a presumption that the executive branch is an ineffective prosecutor of high ranking federal executive officials and national campaign committee officers, and where conflicts of interest may affect the Department of Justice's objective exercise of prosecutorial discretion. *See* 28 U.S.C. §§ 591(b), (c) (describing the persons for whom and situations under which invocation of the Independent Counsel statute is applicable). For the Independent Counsel to play a meaningful role, he or she is necessarily expected to act in a manner different from, and sometimes at odds with, the Department of Justice. As noted in *Poindexter,* "[t]he Independent Counsel, as the very name suggests, is to be independent of the Attorney General." *Poindexter,* 725 F.Supp. at 38.

■ In recognition of the need to have safeguards against potential abuse while at the same time recognizing the special role of the Independent Counsel, section 594(f) includes the crucial qualifier "to the extent possible" in requiring adherence to DOJ policies. "[T]he Committee does not intend that independent counsels comply with Department policies which would undermine their independence or hinder their mission." Sen. Rep. No. 103–101, at 32 (1993), *reprinted in* 1994 U.S.C.C.A.N. 748, 777. The question ultimately presented by this challenge to the indictment is whether the charges against Ronald Blackley present a case where adherence to DOJ policies would be inconsistent with the purposes of the Independent Counsel statute, and therefore permissible under section 594(f)(1). The court's answer is in the affirmative, as it is this court's conclusion that these alleged violations of 18 U.S.C. § 1001, which involve either "knowing" or "willful" false statements by Blackley, involve the type of ethically-based offenses which the section 594(f)(1) "to the extent possible" exception anticipates. Therefore, the Independent Counsel may prosecute this case, even if said prosecution is contrary to the general prosecutorial policies of DOJ.[1]

---

1. Because this court resolves defendant's challenge on the grounds that proscribing this prose-

cution would be inconsistent with the purposes of the Independent Counsel statute, it will not

The Independent Counsel statute was promulgated in the wake of the Watergate scandal, at a time when the nation's confidence in public officials was at an historical nadir. The aspirational goal of the Independent Counsel law was to give the public confidence that crimes committed by government officials would be fully and fairly investigated and prosecuted by an entity with some measure of independence from the individuals he or she must investigate and prosecute. Whenever the Attorney General applies to the Special Division for the appointment of an Independent Counsel, he or she is necessarily addressing a situation in which the integrity of public officials has either been called into question or may soon be called into question. In essence, the Attorney General is charging the Independent Counsel not only with the responsibility of investigating and prosecuting government officers, but also, by implication, with maintaining and/or restoring public trust in government. In this court's view, adherence to an executive branch policy that directs a prosecutor to not pursue indictments against executive branch employees for their criminal ethical violations is in direct contravention with the task with which an Independent Counsel is charged. To statutorily proscribe an Independent Counsel from seeking indictments under ethically oriented statutes is a restriction at odds with the "mission" of an Independent Counsel, namely, to ensure that government officials are being properly investigated and prosecuted for alleged breaches of the public trust. For this reason, to follow the policy of DOJ would be "inconsistent with the purposes of this chapter [the Independent Counsel statute]" and, therefore, departures from the policy are not only permissible, but expected.

While there is no doubt both a reasonable and logical rationale that supports the Department of Justice's policy to not pursue an alleged Ethics in Government Act violation under section 1001 unless that violation "conceals significant underlying wrongdoing," that rationale cannot be applied to the particular task with which an Independent Counsel is charged. Potential criminal ethical violations that may be too small to concern the Department of Justice are nonetheless properly within the purview of the Independent Counsel because the Independent Counsel is, in a sense, charged with the responsibility of ensuring that public officials have maintained the highest standards of ethical conduct. Following an executive branch policy concerning 18 U.S.C. § 1001 could prevent an Independent Counsel from performing the exact task that the executive branch, the Special Division, and by implication, the public, have asked him or her to perform.

Because one of the purposes of the Independent Counsel statute is to maintain public confidence in the conduct of government officials, an Independent Counsel needs to have significant latitude to investigate and prosecute alleged criminal violations that call into question ethical conduct. Mr. Blackley has been charged with three violations of 18 U.S.C. § 1001 for allegedly making knowing or willful false statements. As these charges raise questions concerning Mr. Blackley's ethical conduct, these prosecutions, for the reasons stated above, are properly pursued by the Independent Counsel. Therefore, this court holds that, even if bringing these charges against Ronald Henderson Blackley is inconsistent with written and established DOJ policy (an issue this court declines to address, *see* FN 1), the indictment nonetheless does not violate section 594(f) because the charges fall under the "inconsistent with the purposes of this chapter" exception to the requirement that the Independent Counsel follow DOJ prosecutorial policies. This court will therefore not grant defendant's motion to dismiss on the basis that the prosecution of this case circumvents established DOJ policy and is therefore prohibited under section 594(f)(1).

C. Did the Special Division have the Power to Refer This Matter to the Independent Counsel?

█ Defendant's original Motion to Dismiss the Indictment alleges that the Special

---

address the question as to whether this prosecution is, in fact, contrary to the policies of the Department of Justice.

Division exceeded its constitutional powers when it referred a related matter under section 594(e) over the express objection of the Attorney General. That motion asserts that the exercise of prosecutorial jurisdiction by the Independent Counsel that is not pursuant to a specific request by the Attorney General violates Article II, Article III, and *Morrison v. Olson.* Notably, defendant's Supplemental Memorandum largely abandons this challenge to the validity of the indictment.[2]

To properly address this argument, this court would have to determine whether the modification of the jurisdictional mandate should have been done under the referral power of section 594(e) (which does not require a request by the attorney general) or the expansion power of § 593(c)(2) (which does), and whether this particular section 594(e) referral was unconstitutional because it permitted the creation of prosecutorial jurisdiction over the express objection of the Attorney General, arguably infringing upon the executive branch's exclusive power to enforce the laws of the United States.

However, this court is not jurisdictionally situated such that it may consider these claims as these issues were considered, analyzed and definitively answered in *In re Espy*, 80 F.3d 501 (D.C.Cir.1996). Congress designated the Special Division a "division of the United States Court of Appeals for the District of Columbia Circuit." 28 U.S.C. § 49. For this court to review the constitutionality of the referral jurisdiction granted *In re Espy* would require it to sit in an appellate capacity over the D.C. Circuit, which it cannot and will not do. If the Special Division concluded that "the new matter is demonstrably related to the factual circumstances that gave rise to the Attorney General's initial investigation and request for appointment of an independent counsel," *In re Espy*, 80 F.3d at 509, this court is not empowered to disturb those findings. Nor may this court substitute its own constitutional analysis of § 594(e) and conclude that the concurrence of the Attorney General is required before the Special Division can re-

fer related matters. The *Espy* court determined that under the Act the court can refer a related matter to an Independent Counsel under section 594(e) without the concurrence of the Attorney General. *Id.* at 504–06. To the extent defendant is challenging the jurisdiction of the Independent Counsel based upon arguments already asserted by DOJ and resolved by the Special Division, defendant's motion to dismiss cannot be granted.

A separate order shall issue this day.

### ORDER

This matter comes before the court on defendant's Motion to Dismiss Indictment of Ronald Henderson Blackley pursuant to Fed. R.Crim. Proc. 12(b). Upon consideration of the motions and oppositions thereto, the oral arguments of both parties, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendant's Motion to Dismiss Indictment is DENIED.

SO ORDERED.

---

**2.** Defendant's original counsel, who filed the initial Motion to Dismiss, was disqualified. *See United States v. Blackley*, —— F.Supp. —— (D.D.C. August 22, 1997). The supplemental memorandum was filed by new counsel, who entered their appearance on September 22, 1997.