UNITED STATES of America, Appellee,

v.

Ronald H. BLACKLEY, Sr., Appellant.

No. 98–3036.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 19, 1998.

Decided Jan. 26, 1999

Sheldon Krantz argued the cause for appellant. With him on the briefs were Elizabeth R. Dewey and Barbara Rowland.

Charles M. Kagay, Chief Appellate Counsel, Office of Independent Counsel, argued the cause for appellee. With him on the brief were Donald C. Smaltz, Independent Counsel, William F. Fahey, Counselor, Barry Coburn, Assistant Independent Counsel, and Trent B. Harkrader, Associate Independent Counsel.

Before: WILLIAMS, GINSBURG and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Ronald Blackley, one time Chief of Staff to Secretary of Agriculture Michael Espy, was convicted of three counts of making false statements relating to over $22,000 that he received from individuals regulated by the Department of Agriculture. Blackley was investigated and prosecuted by the Office of Independent Counsel appointed to investigate allegations of gratuities received by Secretary Espy. On appeal, Blackley's principal claim is that the crimes charged lie outside the Independent Counsel's jurisdiction. Rejecting that and Blackley's other contentions, we affirm.

\* \* \*

On August 8, 1994 the Attorney General applied under 28 U.S.C. § 592(c)(1) to the special division of the United States Court of Appeals for the District of Columbia for the purpose of appointing independent counsels, see 28 U.S.C. § 49 (the "Special Division"), seeking appointment of an independent counsel "to investigate whether any violations of federal crimes were committed by Secretary Espy, and to determine whether prosecution

is warranted." The Special Division's September 9, 1994 order (the "original order") appointed Donald C. Smaltz as Independent Counsel, with the authority and jurisdiction to:

> [I]nvestigate to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether [Secretary Espy] has committed a violation of any federal criminal law ... relating in any way to the acceptance of gifts by him from organizations or individuals with business pending before the Department of Agriculture.

September 9, 1994 Order of Special Division at 1. The original order also gave the Independent Counsel jurisdiction over crimes "connected with" this core jurisdiction. We save for later the precise wording of these additional grants.

The Independent Counsel later applied to the Special Division asking for a further "referral" under 28 U.S.C. § 594(e).[1] On April 1, 1996, over the objection of the Attorney General, the Special Division approved the application and issued an order stating that the Independent Counsel had jurisdiction to:

> [I]nvestigate and prosecute any violation of any federal law ... related to any application, appeal, or request for subsidy made to or considered by the United States Department of Agriculture, for which Secretary of Agriculture Alphonso Michael (Mike) Espy and/or his Chief of Staff Ronald Blackley intervened in the application, approval, or review process.

April 1, 1996 Order of Special Division. In doing so, the Special Division said that it was "interpreting, but not expanding, the independent counsel's original prosecutorial jurisdiction." *In re Espy*, 80 F.3d 501, 507 (D.C.Cir.1996). It found that "the new matter is demonstrably related to the factual circumstances underlying the Attorney General's original investigation and request for appointment of an independent counsel." *Id.* at 508.

On April 22, 1997 the Independent Counsel secured an indictment of Blackley on three counts of making false statements in violation of 18 U.S.C. § 1001. The indictment alleged that Blackley, while serving as Chief of Staff at the U.S. Department of Agriculture, received more than $22,000 from individuals regulated by the Department, and then lied about it on three separate occasions: once on his Executive Branch Public Financial Disclosure Form, SF 278, and then twice in sworn statements to the inspectors general of the Department and the United States Agency for International Development ("USAID"). In the sworn statement to the Department of Agriculture inspector general Blackley said,

> At the time I became chief of staff for Secretary Espy ..., I severed myself from all of my prior businesses and financial interests. I no longer had any active connection with [various named companies] or any other company or business interest in Mississippi or elsewhere. I received absolutely no money or remuneration of any kind from any of these companies for work performed in 1993 after I became chief of staff.... The only income I have earned during the period during the period from January 21, 1993 to the present date, with the exception of the sale of my former residence in Greenville, is my salary from USDA.

And in a sworn statement before the USAID, he said, "After I ended my consulting business and entered U.S. Government service, I did not receive any remuneration of any kind from [a named client] or anyone else."

A jury found Blackley guilty on all three counts, and the district court sentenced him to 27 months imprisonment and three years of supervised release.

\* \* \*

A. *Jurisdiction of the Independent Counsel*[2]

■ Defendant's first jurisdictional claim rests solely on the fact that the *text* of the

---

1. 28 U.S.C. § 594(e) states that "[a]n independent counsel may ask the Attorney General or the [Special Division] to refer to the independent counsel matters related to the independent counsel's prosecutorial jurisdiction, and the Attorney

General or the [Special Division], may refer such matters."

2. Blackley in part appears to cloak his challenge to the jurisdiction granted by the original order

indictment fails to lay out the trail connecting the original grant of jurisdiction to the charged violations. As Rule 7(c)(1) of the Federal Rules of Criminal Procedure specifies that an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the *offense* charged," we can imagine an argument that language setting out the connective trail would be offensive surplusage, which the court might strike under Rule 7(d). But the reverse—that such language is required— seems without foundation. Defendant cites no case, rule or statute supporting the claim, and points to no inconvenience that the omission presents for him. In a case where the connection between the relevant referral or referrals and the facts set forth in the indictment or developed at trial was unclear, presumably the defendant could secure dismissal of the indictment if the independent counsel failed, on motion to dismiss for want of jurisdiction, to make a record of the necessary connective links. Cf. Fed.R.Crim.P. 16(a)(2) (limiting required disclosure of prosecutor's investigative materials in ordinary case). But that possibility is no basis for cluttering up the indictment.

More substantively, Blackley argues that the indictment is not within the jurisdiction granted in the Special Division's original order. The Independent Counsel evidently regards that as the proper jurisdictional question; he makes no claim that the April 1996 referral *expanded* his jurisdiction. This view, seemingly shared by both parties, tracks the position of the Special Division itself, which, as we noted, said in making the April 1996 referral that it was "interpreting, but not expanding, the independent counsel's original prosecutorial jurisdiction, ... mak[ing] explicit the independent counsel's jurisdiction over a matter that was implicitly included in the original grant." *In re Espy*, 80 F.3d at 507. Nor does the Independent

Counsel make the argument, which we consider in *United States v. Hubbell*, 167 F.3d 552, 557–60 (D.C.Cir.1999) released today, that the Special Division's interpretation of the original order, set forth in the later referral, is entitled to deference. Accordingly, we review de novo the relationship between the indictment and the jurisdictional grant of the original order.[3]

In analyzing the relation between the offenses charged here and the language of the original order (including both its statement of the core offenses and the various ancillary clauses), Blackley frequently invokes a phrase used by the Supreme Court in *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), "demonstrably related." We are not at all sure that the adverb "demonstrably" adds much to the concept of relatedness, other than perhaps to say that if the relation depends on some facts, then the facts may be litigated. Whatever its force, however, the phrase was not used by the Court in relation to the present issue at all. The Court used it solely in connection with the anterior issue of the relation between the Attorney General's initial investigation and presentation to the Special Division, on the one hand, and that Division's original grant of authority to an independent counsel, on the other. In resisting a constitutional attack on the vesting of power in the Special Division, the Court observed:

> In order for the Division's definition of the counsel's jurisdiction to be truly "incidental" to its power to appoint, the jurisdiction that the court decides upon must be demonstrably related to the factual circumstances that gave rise to the Attorney General's investigation and request for the appointment of the independent counsel in the particular case.

---

in an attack on the Special Division's April 1, 1996 referral, as he did before the trial court (see "Motion to Dismiss Indictment" at 10–11). But as the district court appears to have read the challenge as going at least in part to the scope of the original order, see *United States v. Blackley*, 986 F.Supp. 607, 610 (D.D.C.1997), we regard the relation between the indictment and the original order as properly before us.

**3.** As the Independent Counsel only marginally invokes the April 1996 referral as support for his jurisdiction over the crimes charged in the indictment, and we in no way rely on it in upholding the indictment as within the Independent Counsel's jurisdiction, Blackley's contention that the district court wrongly failed to review that referral itself appears entirely moot.

*Id.* at 679, 108 S.Ct. 2597. Here, of course, the defendant is not challenging the constitutionality of the Special Division's grant of jurisdiction, but the fit of the present prosecution within that grant. Cf. *United States v. Tucker,* 78 F.3d 1313, 1321 (8th Cir.1996) (holding that the "demonstrably related" language did not govern the Independent Counsel's jurisdiction under a referral).

■ As we mentioned above, a number of clauses of the original order explicitly authorize the Independent Counsel to go beyond crimes possibly committed by Secretary Espy in accepting gifts from persons with matters pending before the Department. Besides power to look into those, the order gave the Independent Counsel jurisdiction to:

[1] ... investigate other allegations or evidence of violation of any federal criminal law ... by any organization or individual developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation.

[2] ... investigate any violation of 28 U.S.C. § 1826, or any obstruction of the due administration of justice, or any material false testimony or statement in violation of federal criminal law, in connection with any investigation of the matters described above.

[3] ... seek indictments and to prosecute any organizations or individuals involved in any of the matters described above, who are reasonably believed to have committed a violation of any federal criminal law arising out of such matters, including organizations or individuals who have engaged in an unlawful conspiracy or who have aided or abetted any federal offense.

[4] ... fully investigate and prosecute the subject matter with respect to which the Attorney General requested the appointment of independent counsel, as hereinbefore set forth, and all matters and individuals whose acts may be related to that subject matter, inclusive of authority to investigate and prosecute federal crimes ... that may arise out of the above described matter, including perjury, obstruction of justice, obstruction of evidence, and intimidation of witnesses.

September 9, 1994 Order of Special Division at 2, 3.

It is not claimed that any of the order's language is inconsistent with the Special Division's statutory authority. Nor do we think it could be claimed. Section 593(b)(3) states that the Division is to define the counsel's jurisdiction in a way that "shall assure that the independent counsel has adequate authority to fully investigate and prosecute the subject matter with respect to which the Attorney General has requested the appointment of the independent counsel, and *all matters related to that subject matter.*" 28 U.S.C. § 593(b)(3) (emphasis added). Further, the jurisdiction "shall also include the authority to investigate and prosecute Federal crimes ... that may *arise out of* the investigation or prosecution of the matter with respect to which the Attorney General's request was made, including perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses." *Id.* (emphasis added). The second clause appears to make clear that the Independent Counsel's jurisdiction is to encompass criminal activity concealing, or otherwise thwarting the Independent Counsel's investigation or prosecution of, crimes that satisfy the first "related to" clause. In the Division's order here, ancillary clauses [1] and [4] appear to track the first of the provisions in § 593(b)(3), while that of ancillary clauses [2] and [4] appear to implement the second.

Blackley proposes an interpretation of the order's jurisdictional scope that would allow little or no discernible weight to any of the ancillary language, except for that relating to crimes arising out of the investigation or prosecution itself, such as perjury or obstruction of justice. With that exception, he evidently reads the language as limiting the Independent Counsel to possible crimes committed in Espy's own acceptance of gifts.

This clearly cannot be. The word "relation" comprises more than identical twins. And just as a person is "related" not only to his parents and children, but to grandchildren and grandparents, the fact that a crime is in some sense a verbal step or two away from the core crime cannot alone render it *un*related. As we have said, the "central

purpose of the special prosecutor provisions of the [Ethics in Government Act] is to permit the *effective* investigation and prosecution of high level government and campaign officials." *United States v. Wilson*, 26 F.3d 142, 148 (D.C.Cir.1994) (emphasis added). Discussing the "related to" language of § 593(b)(3), we noted that "the scope of a special prosecutor's investigatory jurisdiction can be both wide in perimeter and fuzzy at the borders." *Id.*

Thus, the jurisdiction to look into matters "related to" the core areas of initial inquiry must allow the Independent Counsel enough leeway to investigate and prosecute such matters as are appropriate for him to effectively carry out his mandate. We think such effectiveness can be secured only if the Independent Counsel is at least able to pursue crimes by the original target's close associates in the field of activity under investigation, including crimes that either are of the same sort as the originally specified set of crimes or are ancillary to the commission or concealment of such crimes. Whether an independent counsel has any further scope we need not decide here; obviously his jurisdiction is limited, but this case is squarely within the limits.

The position description for Blackley as Chief of Staff to Secretary Espy characterized him as the Secretary's "alter ego,"; and he played that role in the very activity—running the Department—in which Espy's alleged offenses were committed. His alleged non-disclosures were of sums received from parties doing business with the Department, thus paralleling the Espy allegations. Furthermore, concealment of such receipts, especially in the context of a financial disclosure form intended to bring suspicious influences to the surface and in response to questions of inspectors general, tends not only to prevent discovery of underlying crimes such as receipts of bribes or gratuities, but also to reflect the perpetrator's consciousness of guilt in those receipts.

The proximity of the relation here is underscored by Department of Justice policy (the subject of a separate challenge by Blackley). Justice allows its attorneys to use prosecutions under § 1001 as a vehicle for pursuing public corruption crimes:

> [U]nderlying misconduct is frequently the reason for the defendant's indictment [for false statements] with section 1001 merely being the vehicle for prosecution because of proof problems with more obviously applicable statutes ... *False information on financial disclosure forms frequently masks such underlying offenses as receipt of bribes or gratuities, or conflicts of interest.* When prosecution for those offenses is not practicable, section 1001 is an alternative.

9A DOJ Manual at 9–1938.122–23 (Supp. 1988) (emphasis added). This confirms us in finding that the relation between Blackley's § 1001 violations and the core charges set out in the original order is tight enough to meet the "related to" criterion of § 593(b)(3) and the order itself.

Included among Blackley's jurisdictional attacks is his claim that the Independent Counsel violated § 594(f)(1) of the Ethics in Government Act, which provides that an independent counsel "shall, except to the extent that to do so would be inconsistent with the purposes of this chapter, comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws." He claims that here the Independent Counsel violated DOJ policy guidelines, which provide that DOJ attorneys should not prosecute an Ethics in Government Act case under § 1001 "unless the nondisclosure conceals significant underlying wrongdoing." 9A DOJ Manual at 9–1938.123 (1988). Detecting a transgression of the Manual, Blackley argues that it somehow undermines the prosecutorial jurisdiction of the Independent Counsel.

We think Blackley has missed the real defect here—the lack of any cause of action or remedies for defendants like him under the Manual or § 594(f)(1). The Manual itself says that it "is not intended to confer any rights, privileges or benefits on prospective or actual witnesses or defendants. It is also not intended to have the force of law or of a United States Department of Justice directive." 9A DOJ Manual at 9–1938.3. As defendant implicitly acknowledges, violations

of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights. See, e.g., *United States v. Kember*, 648 F.2d 1354, 1370 (D.C.Cir.1980); *United States v. Craveiro*, 907 F.2d 260, 263–64 (1st Cir.1990).

Blackley argues, however, that here the DOJ policy is backed by a statute. While that is true in a sense, it misses the point. In the interest of having the target of an Independent Counsel's prosecution treated no worse than an ordinary defendant, § 594(f)(1) subjects the Independent Counsel to the same guidelines. See S.Rep. No. 97–496 (1982), quoted at H. Rep. No. 103–224, 103rd Cong., 1st Sess. 1993, 1993 WL 302057 at *20 (special prosecutor should act so as to assure that "treatment of officials is equal to that given to ordinary citizens under similar circumstances"). Thus if the Manual explicitly states that it confers no substantive rights on the defendant, the parallelism sought to be achieved by § 594(f)(1) suggests that the defendant here should also be unable to escape conviction by claiming a violation of the policy.

Further, the legislative history suggests that Congress intended that the consequence of a failure to follow these policies would be for the Independent Counsel to explain his decision, not for the guilty defendant to be set free:

> In determining whether it is possible to comply with these policies, the [Independent Counsel] should be guided by his perception of fundamental fairness and of what is required to conduct the investigation conscientiously.... If he does deviate from established practices of the Department, the [Independent Counsel] should thoroughly explain his reasons for doing so in his report to the court at the conclusion of his investigation.

S.Rep. No. 97–496 (1982), quoted at H. Rep. No. 103–224, 103d Cong., 1st Sess. 1993, 1993 WL 302057, at *20. Regardless of the possibility of other remedies under § 594(f)(1), as to which we express no opinion, nothing in the language of the provision or the structure of the Ethics in Government Act suggests that the defendant should be able to escape a sanction otherwise due.

## B. *The Sufficiency of the Indictment*

Blackley says the indictment didn't adequately notify him of the nature of the charges against him. In particular, he argues that count one, which charged him with failure to disclose on his SF 278 for the year 1993 some $22,025 received that year, simply enumerated the 11 checks through which the money was received (with their dates and amounts), plus all four categories on the form ("Assets and Income," "Gifts, Reimbursement and Travel Expenses," "Liabilities," and "Agreements or Arrangements"). Thus it did not connect any of the checks to a specific box on the form. Blackley makes a similar argument as to the other counts, saying that the indictment left him uncertain as to exactly which of his various denials was contradicted by his receipt of the $22,025.

Blackley cites *United States v. Nance*, 533 F.2d 699 (D.C.Cir.1976). There the defective counts of the indictment accused the defendant of falsely making the "following representations," but (amazingly) the representations did *not* follow; none was alleged. *Id.* at 700 n. 3. The present indictment plainly says that Blackley in his SF 278 falsely failed to disclose specified items of income. *Nance* gets Blackley nowhere.

But is it a fatal defect for an indictment to charge a failure to disclose and to assert four categories in the conjunctive, rather than specifying which box each check belonged in? Where the indictment alleges only one offense, it is proper to charge the different means for committing that offense in the conjunctive. See *Joyce v. United States*, 454 F.2d 971, 976 (D.C.Cir.1971); *United States v. UCO Oil Co.*, 546 F.2d 833, 838 (9th Cir.1976); Fed.R.Crim.P. 7(c)(1) (indictment may allege that defendant committed offense "by one or more specified means"). In this case, the categories on the form simply enumerate the various ways the defendant could violate the disclosure requirements of the SF 278 form, and proof of any one of those allegations could sustain a conviction. See *UCO Oil Co.*, 546 F.2d at 838. And the proceeding on any count "will bar further prosecution on *all* matters alleged therein." *Joyce*, 454 F.2d at 977 (em-

phasis added). So the charging in the conjunctive here was proper and satisfies the two requirements for an indictment set out in *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)—telling the defendant what "he must be prepared to meet" and showing to what extent he might in any future proceeding plead former acquittal or conviction. *Id*. at 763–64, 82 S.Ct. 1038.

■ Blackley also argues that none of the counts pleaded any duty to disclose the $22,025. But in counts two and three the indictment spells out what can only be regarded as affirmative misstatements; and in count one the indictment obviously supplied the duty to disclose by spelling out the reporting requirements of SF–278 and explicitly stating that the defendant was required by law to respond truthfully to these requirements.

## C. *Adequacy of Jury Instructions*

18 U.S.C. § 1001 criminalizes certain concealments from, or misrepresentations to, the government. The judge charged the first element in the following terms, the substance of which defendant does not dispute:

> The first element that you must find beyond a reasonable doubt is falsification or concealment. To find the defendant guilty of violating this statute, you must find that for each count charged in the indictment, the defendant either:
>
> a. falsified, concealed, or covered up by a trick, scheme, or device a fact; or
>
> b. made a false, fictitious or fraudulent statement or representation; or
>
> c. made or used a false writing or document containing a false, fictitious, or fraudulent statement or representation.
>
> You may find that the defendant performed more than one of these acts through a single course of action.

Blackley objects that this was error, because in its unanimity instruction the court failed to advise the jury that it had to find unanimously that each statement of the defendant violated a specific form of falsification, leaving it possible that jurors rested their verdict on different forms. The argument simply ignores the language of the charge. Immediately after the passage quoted, the judge said:

> However, to render a guilty verdict, you must unanimously agree on at least one of these three acts.

■ Under any reasonable reading of this instruction, the jury would understand that it must agree unanimously on which of the three the defendant violated.

■ The defendant's second argument, overlapping with his first, is that the district court erred in refusing to give the jury an instruction that to find the defendant guilty of concealment under § 1001, it must find that Blackley's failure to report the various checks he received violated a legal duty. Blackley contends that the legal duty to disclose is an element of the concealment prong of § 1001 that the government must prove to the jury. It is true that every element of a crime of which a defendant is charged should ordinarily be submitted to a jury. *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). It is also true that some circuits have held that the government must generally prove that a defendant has a legal duty to disclose before it can convict for concealment under § 1001. See, e.g., *United States v. Irwin*, 654 F.2d 671, 678–79 (10th Cir.1981). But it is uncertain, since *Gaudin*, whether this judicially created requirement is an element of the crime to be presented to the jury or a purely legal determination to be decided by the court. Cf. *United States v. Zalman*, 870 F.2d 1047, 1055 (6th Cir.1989) (pre-*Gaudin* case holding duty to disclose under § 1001 is a matter of law for the judge and not the jury). At least one post-*Gaudin* case has held that materiality itself, in certain criminal contexts such as tax crimes, is a purely legal question that is not to be submitted to the jury. See *United States v. Klausner*, 80 F.3d 55, 61 (2d Cir. 1996) (distinguishing materiality in *Gaudin* as a mixed law and fact issue).

■ Assuming the duty to disclose is an element of concealment to be charged to the jury under § 1001, the district court's refusal to use Blackley's proposed charge would still not be reversible. Under circuit law, the absence of a jury instruction on an

element of the crime is not reversible error where it is inconceivable that the jury could have found the defendant guilty of the crime without making a finding as to the omitted element. See *United States v. Winstead*, 74 F.3d 1313, 1321 (D.C.Cir.1996); see also *United States v. Parmelee*, 42 F.3d 387, 393 (7th Cir.1994) (holding that instructional error on missing element is harmless if "no rational jury could have found the defendant[ ] guilty of violating [the statute] without also making the proper finding as to the missing element"); *Redding v. Benson*, 739 F.2d 1360, 1363–64 (8th Cir.1984). Here, Blackley argued to the jury various forms of conceivable confusion in the SF 278 and in the statements to the inspectors general that might make his falsifications non-willful, arguments that, given the judge's instruction that the jury must acquit Blackley if they found that he had acted in good faith, the jury had to reject to find him guilty. The judge also instructed the jury on Blackley's defense theory that he did not believe he was obliged to disclose the information he allegedly concealed, instructions that clearly placed before the jury the question of whether Blackley had a legal duty to disclose the 11 checks on his SF–278. Thus, even if there was error in not submitting the duty-to-disclose instruction to the jury, it is unimaginable that the jury could have found Blackley guilty of concealment in count one without first finding a duty to disclose.

Although the misrepresentations in counts two and three are the plainest kind of free-standing, affirmative misstatements, the district court's instructions nominally allowed the jury to convict under the concealment theory of § 1001, though without mention of a need to find a duty to disclose. But given the explicit and affirmative character of the misrepresentation, and the absence of any reliance by the prosecutor on questions posed by the Inspectors General (i.e., a claim that it was the nature of any such question that made Blackley's statements into concealments), the only way "concealment" could have come into the jury's deliberations on those counts would have been as a convoluted version of affirmative misrepresentation. For example, when someone swears that "the only money [he has] earned from January 21,

1993 to the present date [with an irrelevant exception] is [his] salary from the USDA," he is implicitly concealing any other earnings. Thus, no rational jury could have concluded that Blackley was guilty under counts two or three without simultaneously finding that he made affirmatively false statements.

D. *The Departure from the Sentencing Guidelines*

▮ Finally Blackley objects to his sentence of 27 months, arguing that the district court made an upward departure on invalid grounds. The court found that Blackley should be sentenced under the fraud guideline, § 2F1.1 of the United States Sentencing Guidelines, which carries a base level of six. It also found that the specific offense characteristic of "more than minimal planning" applied, and increased Blackley's offense level by two, for a total of eight. It then made an eight-level upward departure, relying on a mix of factors that it believed were not considered by the guidelines in this context. These included the facts that (1) the defendant was a high-level official when he received monies from individuals regulated by the Department; (2) he was informed that he was not allowed to receive such payments; and (3) he twice lied under oath about their receipt.

As Blackley concedes, the fraud guidelines make no explicit provision for an adjustment for offenses committed by public officials. But he insists that the explicit provision for such an adjustment in connection with crimes involving the receipt of gratuity or the deprivation of the right to honest services implies a rejection of any comparable adjustment for fraud. U.S.S.G. §§ 2C1.2, 2C1.7. We think the inference quite weak, however. First, the fraud guidelines explicitly contemplate upward departures in circumstances that fall outside the main core. See U.S.S.G. § 2F1.1, Application Notes 10, 13. And in their more general treatment of departures the guidelines note the impossibility of covering all bases:

Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be

comprehensively listed and analyzed in advance.

U.S.S.G. § 5K2.0. Further, the Sentencing Commission's focus on high status in the government is understandable for offenses where its occurrence, though far from invariable, is salient. As high-level official status does not seem especially salient in fraud generally, the Commission's failing to treat it explicitly in that context implies little. See *Shook v. District of Columbia Fin. Responsibility and Management Assistance Auth.*, 132 F.3d 775, 782 (D.C.Cir.1998) (observing that the force of the expressio unius inference depends entirely on context). The case is thus radically different from *United States v. Sun–Diamond Growers*, 138 F.3d 961 (D.C.Cir.1998), in which we overturned an upward departure based on the high rank of the official who received a gratuity, the Secretary of Agriculture, on the ground that the Guidelines themselves, § 2C1.2, had covered precisely that. We found no material difference in rank or sensitivity between the Secretary and various officials explicitly enumerated in the associated Application Note as instances covered by the explicit provision for departure. *Id.* at 976.

Although at first blush the number of levels seems high, the departure made Blackley's sentence more closely approximate what would follow for kindred crimes committed by high government officials under provisions such as § 2C1.2 itself. We find the departure well within the broad discretion allowed the district court in such matters. See *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

\*   \*   \*

Defendant also claims a violation of Rule 404(b) of the Federal Rules of Evidence, but the claim is too weak to merit discussion. And he argues the sufficiency of the evidence. On that issue he devotes his brief almost entirely to evidence that, if believed and given great weight, might have enabled a jury reasonably to acquit. Perhaps so. But the possible reasonableness of acquittal is not, of course, the test—it is whether a jury could reasonably convict, as here it could.

The defendant's conviction and sentence are confirmed.

*So ordered.*